UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**ARTHUR M. AUE** and **MARIAN H. AUE**,<br><br>Debtors. | Case No. **11-62331-13** |

# MEMORANDUM of DECISION

At Butte in said District this 13th day of June, 2012.

In this Chapter 13 bankruptcy, after due notice, a hearing was held May 22, 2012, in Billings on Debtors' Objection to Proof of Claim No. 8 filed by the Internal Revenue Service. Ralph W. Wilkerson of Billings, Montana appeared at the hearing on behalf of the Debtors and in support of Debtors' objection; Assistant United States Attorney Victoria L. Francis of Billings, Montana appeared on behalf of the Internal Revenue Service and in opposition to Debtors' objection. The Court heard attorney argument and Debtors' Exhibits 1 and 2 were admitted into evidence without objection. No witness testimony was presented.

FACTUAL BACKGROUND

The facts are straightforward and are not in dispute. Debtors' filed a voluntary Chapter 13 bankruptcy petition on December 20, 2011, and list on their Schedule A filed January 13, 2012, a "1/6th Interest in Mineral Rights in Westby, MT. Under lease contract, but not yet producing. Estimated market value is approximately the present value of the debtor's share of the amount due under the contract." Pursuant to a Mineral Deed dated June 11, 2008, Debtor Marian H. Aue owns all the oil, gas, and other minerals in and under and that may be produced from 161.14 acres

1

located in Sheridan County, Montana. Debtors assign a value of $25,000 to the mineral rights. Debtors disclose in their Statement of Financial Affairs that they received $40,285.00 in 2010 as "Royalties from Oil Leases."

The Internal Revenue Service filed Proof of Claim No. 8 on January 18, 2012, asserting a total claim of $53,244.04, of which $52,835.00 is claimed as secured, with the balance of $409.04 claimed as unsecured. The amount of the Internal Revenue Service's secured claim is, according to the Internal Revenue Service, based on the equity in property as provided in the Debtors' schedules, including the value assigned by Debtors' to the mineral rights on Schedule A.

The Internal Revenue Service filed a tax lien with the Clerk and Recorder of Yellowstone County on September 15, 2011. Pursuant to MONT. CODE ANN. ("MCA") § 71-3-204, the Internal Revenue Service's lien attaches to all Debtors' personal property in the State of Montana and all real property in the county in which the lien was filed.

Debtors object to the Internal Revenue Service's Proof of Claim arguing the mineral rights are real property located in Sheridan County that are not subject to the Internal Revenue Service's tax lien. The Internal Revenue Service counters that the $25,000 value assigned by Debtors to the mineral rights stems from Debtors' right to rent payments from an oil and gas lease. The Internal Revenue Service argues Debtors' oil and gas rent payments are personal property and therefore, subject to the lien filed by the Internal Revenue Service in the county of Debtors' residence under Montana's Uniform Federal Lien Registration Act. *See* MCA § 71-3-201, *et seq*. Based upon the facts presented, the sole issue is whether Debtors' right to payments under the Oil and Gas Lease are considered real or personal property.

The basic terms of Debtors' Oil and Gas Lease are summarized in a letter dated

2

September 10, 2010:

> Sheridan County, Montana
> $250.00 per net mineral acre, 3-year term with the option to extend for an additional 2-years @ $200.00 per net mineral acre, 17.50% royalty

The Oil and Gas Lease, dated September 9, 2010, was recorded in Sheridan County, Montana on April 21, 2011. In accordance with the Oil and Gas Lease, which is a "paid-up lease," Debtors received $40,285.00 in 2010 as payment for the initial 3-year term of the Oil and Gas Lease.

## APPLICABLE LAW and DISCUSSION

After reviewing applicable law, the Court agrees with the Internal Revenue Service that Debtors have two property interests at issue with respect to the mineral rights held by Marian Aue. "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Property interests in oil and gas are explained in 1A Summers, OIL AND GAS, § 7.1 (2004):

> Separate mineral estates are created by a transfer of all or a fractional part of the transferor's legal interest in the oil and gas, or by a transfer of the land with an expressed intent to retain all or a portion of the legal interest in the oil and gas. When transfers of this type are made prior to a lease of the land for oil and gas purposes, the conveyance is usually called a mineral deed, and the interest is ordinarily spoken of as a mineral fee, although the landowner may, by deed or other transfer made prior to lease, create a non-participating perpetual royalty interest in the oil and gas.
>
> When a mineral interest is created after a lease of the land for oil and gas purposes and subject to the existing lease, the type of interest created depends on the language used in the instrument and its interpretation by the courts. If an instrument conveys all or a portion of the oil and gas in the land subject to the existing lease together with all or a like portion of the rents and royalties payable under the existing lease, it creates a reversionary interest in the oil and gas, although these instruments are sometimes called mineral and royalty deeds.

1A Summers, OIL AND GAS, § 7.2 further explains the classifications of property interests:

Property interests in land are divided into freehold and nonfreehold estates. The terms are feudal; the freehold estate being the fee simple, fee tail, base and conditional fees, or conventional and legal life estates,. Nonfreehold interests are estates for years, at will, and from year to year. While the nonfreehold estates are personal property from the standpoint of the first classification, and have the incidents of personal property in that respect, they are from the standpoint of policy rules, such as the statute of frauds, interests in land.

Property interests in land are also divided into ownership and nonownership classes; the former being called *jura in re propria*, and the latter *jura in re aliena*. In the ownership class there is the fee simple interest, whether present, in possession, reversion, remainder, or by executory limitations. A life estate and estate for years, profits, easements, and real covenants may all be carved out of these interests and held by others, yet it remains in the ownership class. Of the nonownership class, there is the *license*, profit, easement, or *real covenant*, commonly spoken of as *servitudes*, and the interests of lessees, mortgagees, and lienholders.

Another classification is made of interests in land into corporeal and incorporeal interests, also called possessory and nonpossessory. Possessory interests are those interests which give the holder the privileges and rights of possession of the land, and are all present estates, whether of the freehold or the nonfreehold class. The nonpossessory interests may be divided into two classes: first, those like reversions and remainders, which may ultimately develop into possessory interests; and, second, those interests of the nonownership class, such as easements, *licenses*, profits, and *real covenants*, commonly spoken as *incorporeal hereditaments*, and which do not give the holder possession of the land.

There is considerable overlapping of these classifications. For example, the estate for years, though classed as personal property, may be an interest in land of the nonownership class and at the same time a corporeal interest. And a profit *a prendre*, though classed as an incorporeal interest, is not strictly such.

Montana recognizes the rule that the title to mineral interests in land, including oil and gas interests, may be segregated in whole or in part from the rests of the fee simple title.[1] *Rist v.*

---

[1] Montana's statutory law also provides:

(1) A contract for the sale of minerals or the like (including oil and gas) or a structure or its materials to be removed from realty is a contract for the sale of goods within this chapter if they are to be severed by the seller, but until severance

*Toole County*, 117 Mont. 426, 159 P.2d 340, 342 (Mont. 1945). Such is the case here, where Debtor Marian Aue received a 1/6 interest in mineral rights. The Court agrees with Debtors that the 1/6 interest in mineral rights is real property.

However, Debtors then leased their 1/6 interest in mineral rights to a Kenneth A. Schlenker. Summers explains in § 9.6 that "In practically all jurisdictions, when matters of the payment of delay rentals or the running of covenants for drilling, production, the payment of rents and royalties are involved, the courts apply the rules ordinarily applicable to the relation of landlord and tenant."

Indeed, in Montana, "[t]he lessee [to and oil and gas lease] acquires no corporeal interest in the land itself, but rather a privilege *a prendre*. Until the actual discovery of oil, the interest of the lessee in the land is inchoate. Oil remaining in the ground before recovery is a part of the land, and belongs to the owner of the land; but, when recovered, it becomes personal property. Such personalty is thereupon subject to division in accordance with the terms of the contract of lease." *Voyta v. Clonts*, 134 Mont. 156, 328 P.2d 655 (Mont. 1958). *See also; Rist v. Toole County*, 117 Mont. at 435, *quoting* 4 Glassmire's OIL AND GAS LEASES AND ROYALTIES, 2d Ed. ("A mineral deed is an instrument in the form of a general warranty deed which grants or transfers the minerals in place, or the right to obtain them. It conveys the minerals themselves, which produce the royalty, subject to the lease. To avoid confusion of terms, the distinction must be kept clearly in mind between the thing itself and the proceeds of the thing."); *Callahan v.*

---

a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

MCA § 30-2-107(a)

*Martin*, (1935) 3 Cal.2d 110, 43 P.2d 788 (A profit *a prendre* in an interest in real property in the nature of an incorporeal hereditament.)

Further,

> [t]he word "royalty" has a definite and well-understood meaning in oil operations. It means a share of the product or profit paid to the owner of the property. *Homestake Exploration Corporation v. Schoregge*, 81 Mont. 604, 264 P. 388; *Hinerman v. Baldwin*, 67 Mont. 417, 215 P. 1103. The right to take a profit from the lands of another within the common-law classification may be regarded as a profit a prendre. *Homestake Exploration Corporation v. Schoregge, supra*. This right, if it belongs to the individual distinct from the ownership in other lands, takes the character of an interest or an estate in the land itself. It is an interest in the land, although incorporeal. *Williard v. Federal Surety Co.*, 91 Mont. 465, 8 P.(2d) 633. Such an interest in land may be conveyed *(Krutzfeld v. Stevenson, supra*), and may likewise be excepted or reserved from conveyance.

*Marias River Syndicate v. Big West Oil Co.*, 98 Mont 254, 38 P.2d 599, 601 (Mont 1934). The Montana Supreme Court later reiterated:

> This court has consistently adhered to the view that the word 'royalty' standing alone has a "very well understood and definite meaning in mining and oil operations. As thus used, it means a share of the produce or profit paid to the owner of the property. Webster's Dictionary.' The expression 'a share of the produce or profit paid to the owner of the property' is quite different from a share or interest in the property itself. It recognizes that the originator of the royalty is still the owner of the real property to which it relates, and that the assignee's interest is only in the 'produce or profit' therefrom,-namely, in the personal property which the owner is to receive for the granted privilege of producing minerals from his land.' *Rist v. Toole County, supra*, 117 Mont. at page 432, 159 P.2d at page 342.

*Stokes v. Tutvet*, 134 Mont. 250, 257, 328 P.2d 1096 (Mont. 1958).

Following the directive of Montana law and distinguishing between the thing itself and the proceeds of the thing, the Court concludes that Marian Aue has a real property interest in the thing itself, namely the mineral and oil rights, and a personal property interest in the proceeds of the thing, namely the rents and profits therefrom. Debtors have scheduled only the real property

interest in the mineral and oil rights, but have not scheduled their interest in the rents and profits therefrom.

The matter before the Court at the present time is Debtors' objection to the Internal Revenue Service's Proof of Claim. It is well settled under Federal Rule of Bankruptcy Procedure 3001(f) that a proof of claim completed and filed in accordance with 11 U.S.C. § 501 and any applicable Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim. Thus, if a procedurally proper claim is filed, an objecting party carries the burden of going forward with evidence contesting the validity or amount of the claim. *In re Weber*, 16 Mont. B.R. 49, 56 (Bankr. D. Mont. 1997); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991). Once an objecting party succeeds in overcoming the *prima facie* effect given to the claim by Rule 3001(f), the burden shifts to the claimants to prove the validity of their claims by a preponderance of the evidence. *In re Allegheny Int'l, Inc*. 954 F.2d 167, 173-74 (3rd Cir. 1992).

For the reasons discussed above, the Court finds that Debtors' have not sustained their initial burden under Rule 3001(f). The Court will therefore enter a separate order as follows:

IT IS ORDERED that Debtors' Objection to Proof of Claim No. 8 filed by the Internal Revenue Service is OVERRULED.

>BY THE COURT
>
>/s/ Ralph B. Kirscher
>HON. RALPH B. KIRSCHER
>U.S. Bankruptcy Judge
>United States Bankruptcy Court
>District of Montana